Acheson, D. J.
This case comes before the eouri upon exceptions to the report of the register distributing the fund derived from the sale of the real estate of Thomas May, the bankrupt, which was sold under an order of this court divested of liens. The bankrupt acquired, by purchase, an equitable interest in this real estate about the year 1851, and thereafter, and until the sale by the assignee in bankruptcy, he and his wife resided on the land. His equitable title was sold at sheriff’s sale in 1861'. He purchased it back from the sheriff’s vendees and caused them to convey the title to his wife, Manila, in 1867. Having paid the balance of his original purchase money, he caused the legal title to he conveyed by his vendor and the grantee of his vendor to his wife, *846 in the years 1865 and 1867. The title to the land remained in the wife until March 2, 1872, on which day Thomas and Marilla May conveyed the land to William M. Piatt, who, on March 4, 1872, conveyed it to Thomas May. All the foregoing conveyances were promptly recorded.
Judson Lutes obtained judgments against Thomas May in the years 1870 and 1871, when the title to the land was in Marilla May. Before the register he claimed the fund for distribution in preference to judgment creditors of Thomas May, whose judgments were obtained after March 4, 1872, and when the title to the land was in him. The register appropriated the fund to the latter judgment creditors. To this appropriation Judson Lutes has filed exceptions. If the rights of the parties are to be determined by what appears on the face of the record, the appropriation is clearly correct. But the exceptant contends that although, at the dates of his respective judgments, the legal and recorded title was in Marilla May, yet her husband was then in fact the owner of the land, or had such interest therein as was bound by the lien of his judgments.
The fourth exception is as follows: “The register erred in not finding that the conveyances of said land to Marilla May were fraudulent and void as to the creditors of Thomas May.”
In connection with the fact that Thomas May was somewhat indebted when he caused the aforesaid conveyances to be made to his wife, and owned no other real estate, the ex-ceptant’s ease rests mainly upon his own testimony, and that of one Christian Shook, as to alleged declarations of Thomas, and Marilla May, made in the fall of 1868, immediately before the exceptant made his first loan to Thomas May, for which he took the joint note of the husband and wife.
Lutes testifies: “I asked him (May) as to the title to the land. He replied that the deed he had made to his wife for the reason that he had been so harassed by the sheriff; that, he did it for a scare to his creditors, so that he could keep them off until he had a chance to turn himself and pay them; but that he had bought and paid for the land, and his wif* *847 would make the same statement about the ownership of the land.”
A few days afterwards, Lutes says, he, in company with Christian Shook, visited May’s house, and there saw Mr. and Mrs. May, and that the former then repeated to his wife what he had previously told him, (Lutes,) and she said “that Thomas had bought the land and paid for it, and had the deed made to her for the purpose of keeping folks from crowding him, so that he would have a chance to turn himself and pay his debts. * * * I remember (Lutes testifies) Mrs. May said I needn’t be afraid to trust Thomas, for the reason of the deed being in her name, for he was the real owner and not her, and that they had got their debts pretty well paid up, and she didn’t see any reason why he couldn’t get along.”
Christian Shook testifies: “Mr. Lutes was going to let May have some money, and Lutes wanted Mrs. May to go Tom’s security. Mrs. May laughed, and said she thought there was no use in going as Tom’s security, for the place belonged to Tom.”
This testimony of Judson Lutes and Christian Shook is denied in tote, and flatly contradicted from first to last, by Thomas May, who was examined at length. It is also contradicted by Marilla May. Neither of these witnesses has any pecuniary interest in the present controversy. On the other hand, Judson Lutes is a party in interest: moreover, he is seriously discredited by testimony in the case affecting his reputation for truth and veracity.
One of the exceptions now pressed is that "the register erred in not finding that both Thomas May and Marilla May told Judson Lutes, at the time he loaned his money and took his first judgment, that the land belonged to Thomas May. ” But, after a eareful consideration of all the evidence in the case, I cannot say the register was wrong in not so finding.
Were it conceded, however, that the alleged declarations were made, what then? The register finds, and, I think, rightly, that all the debts which Thomas May owed when the conveyances were made to his wife were paid long since. *848 Now, it is not pretended that at the time of the conveyances to the wife Thomas May contemplated embarking in any hazardous business, nor is it shown that he then had any intention to contract new indebtedness. Indeed, there is not a particle of evidence to show that any fraud was intended upon future creditors. Therefore, even if the conveyances to his wife were fraudulent as to then-existing creditors, they were good and valid as respects subsequent creditors. Snyder v. Christ, 39 Pa. St. 499; Monroe v. Smith, 79 Pa. St. 459; Harlan v. Maglaughlin, Pittsburgh L. J., May 19,1880. Moreover, before Judson Lutes made his first loan to Thomas May he was fully informed of the conveyances to the wife. As to him, therefore, there could be no fraud, Snyder v. Christ, supra; Monroe v. Smith, supra.
Most certainly a fraudulent conveyance is binding on the grantor and those claiming under him. Hence, if it ever so clearly appeared that the intentions of Thomas May were covinous as respects his then-existing creditors, yet as against him and a subsequent creditor, who became such with full knowledge of the facts, the estate conveyed to the wife was as absolutely hers as if the transaction was free from the taint of fraud. But one of the exceptions is that “the register erred in not finding that Marilla May held said land in trust for her husband, Thomas May, the bankrupt;” and a very earnest and able argument to show that such trust relationship existed was made by the learned counsel for the exceptant, who cited in support of the proposition Kelly’s Appeal, 77 Pa. St. 232. But in that case the court adopted the theory of a trust in the wife for her husband, because the Wife never claimed the land, but permitted it to be taken in execution and sold as the estate of her deceased husband, and there was no evidence that the title was put in the wife to defraud her husband’s creditors. Here, however, the very evidence upon which the exceptant relies to show the trust arrangement alleged, if accepted as true, establishes that the conveyances to Marilla May were in fraud of her husband’s creditors, and .that the intention was to withdraw the land from their reach — a purpose entirely inconsistent with any *849 beneficial ownership of the land remaining in the husband. Assuredly there is no evidence in this case of any express trust, and none which warrants the implication of the trust attempted to be set up. I entirely agree with the register that the alleged declarations of Marilla May to Judson Lutes, if made, did not affect her, or operate as an estoppel either against her or the parties to whom the register awarded the fund.
The conclusion of the whole matter, therefore, is that whether the conveyances to Marilla May were, on the part of her husband, bona fide, conferring upon her a valid gift, (as the register finds,) or were made with fraudulent intent, the land was hers when the exceptant’s judgments were entered, and the exceptant has no right to the proceeds of the assignee’s sale in preference to bona fide creditors without notice, whose judgments against Thomas May were obtained after the title vested in him by virtue of the conveyance from William M. Piatt.
The assignee has excepted to the disallowance of a bill of eosts and attorney’s fees incurred in the trial of a scire facias to revive the judgment of one Detrick, in the court of common pleas of Wyoming county. It was objected to this claim that these expenditures were not necessarily or legally incurred by the assignee; that the contest was wholly between judgment creditors, and the assignee had no interest in it, and that the expenses were incurred, in fact, on behalf of Judson Lutes. The presumption is that the register rightfully decided against the claim, and evidence has not been submitted to me to convict him of error.
And now, to-wit, June 9, 1880, the exceptions to the register’s report are overruled, and the report is confirmed absolutely by the court.